UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

VIRGINIA LALLAVE,

                              Petitioner,

        -against-

F. MARTINEZ JR., MICHAEL CARVAJAL, and
PATRICK MCFARLAND,

                              Respondents.

**MEMORANDUM & ORDER
22-CV-791 (NGG) (RLM)**

VIRGINIA LALLAVE,

                              Petitioner,

        -against-

MICHAEL CARVAJAL, and PATRICK
MCFARLAND,

                              Respondents.

**22-CV-4136 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Petitioner Virginia Lallave's motion for reconsideration of this court's previous decision on her First Step Act ("FSA") credits and a newly filed Petition for a Writ of Habeas Corpus, which raises the same issue of her entitlement to FSA credits. For the reasons explained below, Petitioner's motion for reconsideration is DENIED, and her new Petition is GRANTED as to her First Step Act claim but DENIED as to her *Accardi* claim.

## I.   BACKGROUND

The court assumes familiarity with the factual and procedural background of this case, which is set forth in greater detail in the court's prior opinion, and includes information only to the extent it is relevant to the resolution of this motion. *See Lallave v. Martinez*, No. 22-CV-791 (NGG) (RLM), 2022 WL 2338896 (E.D.N.Y. June 29, 2022).

On July 3, 2019, Petitioner pleaded guilty to (1) participating in a conspiracy to distribute substances containing a detectable amount of fentanyl and (2) participating in a conspiracy to distribute and possess with intent to distribute substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. (*See* Plea Tr., *United States v. Lallave* ("*Lallave I*"), No. 19-CR-15 (AJN) (Dkt. 26) at 10:1-14; Judgment, *Lallave I* (Dkt. 37).)[1] Petitioner was sentenced to 42 months' imprisonment and three years of supervised release. (*See* Sentencing Tr., *Lallave I* (Dkt. 41) at 27:17-20.)

On July 2, 2020, pursuant to the expanded authority of the Bureau of Prisons ("BOP") under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Petitioner was released from FCI Danbury and placed in the custody of the Bronx Community Reentry Center (the "Reentry Center"). (First Pet. (Dkt. 1) ¶¶ 12, 14.) While on home confinement, Petitioner has been the primary caretaker for her three children; a crucial caretaker for her father, who has renal failure and is on dialysis; employed in construction and maintenance; and has completed multiple courses. (Second Pet., *Lallave v. Martinez* ("*Lallave III*"), 22-CV-4136 (NGG) (Dkt. 1) ¶¶ 17-18.) The Reentry Center has supervised Petitioner and regularly tested her for controlled substance use. (First Pet. ¶¶ 19-20.)

In late January 2022, Petitioner's urine sample was positive for marijuana in violation of the BOP's Inmate Discipline Program. (*See* Incident Report (Dkt. 15-2).) After limited investigation and process, it was determined that Petitioner had violated the home confinement program, and the BOP imposed a sanction of a loss

---

[1] All citations to the docket, including but not limited to references to "Dkt." and "the First Petition," are to *Lallave v. Martinez* (*Lallave II*), 22-CV-791 (NGG) (RLM), unless indicated otherwise with a reference to another case name.

of good conduct time. (*See* DHO Report (Dkt. 15-12).) When Petitioner was given a copy of the paperwork, she was informed that she would be confined to the Reentry Center for 30 days. (First Pet. ¶ 31.) However, on February 8, 2022, U.S. Marshals brought Petitioner to the Metropolitan Detention Center ("MDC") in Brooklyn. (*Id.* ¶ 33.) On February 11, 2022, Petitioner filed her initial petition (the "First Petition"), which included a request for enlargement. The court granted Petitioner's request for enlargement because of the irreparable harm that incarceration would cause to her family and employment, and she was released from the MDC on February 12, 2022. (*See id.* ¶¶ 69-72; Feb. 11, 2022 Order.)

On June 29, 2022, this court issued an order resolving the claims in the First Petition. Of relevance here, the court declined to consider Petitioner's argument that the court should order the BOP to adjudicate her FSA credits. The FSA permits inmates to "earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4). This court found that there were two procedural hurdles to consideration of Petitioner's FSA credits. First, Petitioner raised the claim for the first time in her reply, and second, she had not exhausted her administrative remedies. *See Lallave*, 2022 WL 2338896, at *10-*11.

On July 14, 2022, Petitioner filed a motion for reconsideration of this court's decision. (*See* Mot. for Reconsideration (Dkt. 30).) She argued that at the time of the First Petition she had enough FSA credits to entitle her to immediate release, and that at the time she filed her motion for reconsideration, she had exhausted her administrative remedies. (*See id.*) On the same day, Petitioner filed her second petition (the "Second Petition"), which raised the same issue of her FSA credits, in order to provide the court with an alternative mechanism for granting the same relief. (*See* Second Pet.) The Second Petition alleges a violation of the

FSA and of the principle set forth in *Accardi v. Schaughnessy* that agencies must comply with their own regulations. *See* 347 U.S. 260 (1954). Defendants filed a consolidated opposition to both of Petitioner's requests, arguing that she failed to exhaust her administrative remedies and is ineligible for FSA credits. (*See* Opp. (Dkt. 37).)

## II. MOTION FOR RECONSIDERATION

### A. Standard of Review

In the Second Circuit, "[t]he threshold for prevailing on a motion for reconsideration is high." *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010) (summary order).[2] The party seeking reconsideration must establish: (1) that the court overlooked critical facts or controlling decisions that could have changed its decision, *see Schrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995); (2) an intervening change in controlling law; (3) new evidence; or (4) the need to correct "clear error or prevent manifest injustice." *See Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d. Cir. 1992). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). The court has substantial discretion on a motion for reconsideration. *See Market Am. Ins. Co. v. Linhart,* No. 11-CV-5094 (SJF) (GRB), 2012 WL 5879107, at *2 (E.D.N.Y. Nov. 16, 2012).

### B. Discussion

Petitioner argues that the court erred in finding that that she would not be entitled to immediate release and should have

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

waived administrative exhaustion on that basis. (Mot. for Reconsideration at 4.) In its decision on the First Petition, this court noted that administrative exhaustion might be waived if Petitioner was entitled to immediate release. *See Lallave*, 2022 WL 2338896, at *10. However, following other courts in this Circuit, this court concluded that Petitioner would not be entitled to immediate release because courts could not compel the BOP to calculate FSA credits during the phase-in period. *See id.* Petitioner helpfully directs the court to a regulation, which clarifies that after the FSA phase-in period, which ended on January 15, 2022, courts can mandate the calculation of credits that accumulated during the phase-in period. *See* 28 C.F.R. §§ 523.42. Thus, she contends that she would have been entitled to immediate release, and this court should have waived administrative exhaustion. In opposition, Respondents argue that Petitioner "fails to point to any proper grounds for reconsideration" and note the high bar for reconsideration. (Opp. at 9.)

This court's decision did not rest exclusively on the fact that Petitioner was likely not entitled to immediate release. Instead, the court merely noted that had Petitioner been entitled to release as of February 2022, "it may be appropriate to consider the FSA claim at this time." *See Lallave*, 2022 WL 2338896, at *10. This court went on to explain that courts in this Circuit have taken different approaches to the question of whether exhaustion can be excused on the basis of irreparable harm where a petitioner may be entitled to immediate release. *Id.* (collecting cases). Further, in discussing administrative exhaustion in relation to one of Petitioner's other claims, this court noted that

> [c]ourts have frequently found that even continued detention does not constitute irreparable harm. *See Torres v. Decker*, No. 18-CV-10026 (VEC), 2018 WL 6649609, at *3 (S.D.N.Y. Dec. 19, 2018) (finding that prolonged detention is not an irreparable injury that excuses exhaustion); *Giwah*

*v. McElroy*, No. 97-CV-2524, 1997 WL 782078, at *4 (S.D.N.Y. Dec. 19, 1997) ("If incarceration alone were the irreparable injury complained of, then the exception would swallow the rule that the INS administrative remedies must be exhausted."). Rather, courts find irreparable harm only in exceptional circumstances, such as where a defendant is being held in solitary confinement. *See, e.g., United States v. Basciano*, 369 F. Supp. 2d 344, 349 (E.D.N.Y. 2005) (finding irreparable harm where defendant was being held in solitary confinement and "faced with the prospect of perpetual detention without access to judicial review under circumstances that raise a serious and urgent constitutional question while the BOP fiddles"); *Brooks v. Terrell*, No. 10-CV-4009 (AKT), 2010 WL 9462575, at *5 (E.D.N.Y. Oct. 14, 2010) (holding that detention in solitary confinement could constitute irreparable harm).

*Id.* at *9. In light of this precedent, the court noted that the fact that Petitioner was serving her sentence in home confinement, where she is able to live with her family and work, largely undermines the policy choice that has been made in certain instances to waive exhaustion where immediate release is possible. *Id.*

In deciding not to waive administrative exhaustion, a substantial concern for this court was the need to develop the factual record. *See id.* at *11. A central reason for the administrative exhaustion doctrine is for courts to have a factual record upon which to base their decisions. This court explained that it had "virtually no information" about Petitioner's program participation other than her assertions that "she has participated in relevant programming both at FCI Danbury and while on home confinement, which included GED and typing classes, working in the kitchen, and training courses." *Id.* at *11. At that time, the court had not been apprised of whether Petitioner had participated in evidence-based recidivism programs, as set forth in the FSA. *See* 18 U.S.C.

§§ 3632(d)(4)(C), 3624(g)(1)(A). For the first time, on her motion for reconsideration, Petitioner argued that she had obtained credits under the BOP's "interim procedures." (Mot. for Reconsideration at 4-5.) However, at the time that the motion for reconsideration was filed, the court's information about such interim procedures was limited to the information that Petitioner included in her submission, which was derived from declarations submitted by one BOP employee in a few out of circuit cases. (*See id.*) At the time this court considered the First Petition, it was not positioned to decide whether Petitioner was entitled to immediate release based on the sparse record before it. Furthermore, at that time, this court was not willing to order the BOP to calculate Petitioner's time credits because she had not yet exhausted her administrative remedies.

Though this court may have overlooked the BOP regulation specifying the timing of the application of FSA credits, this information would not have changed its decision because (i) the fact that Petitioner may have been entitled to immediate release would not have automatically caused the court to waive administrative exhaustion, and (ii) the court lacked an administrative record that would have allowed it to conclude that Petitioner was entitled to immediate release and to make other factual determinations. Petitioner has failed to persuade the court that any of the factors for reconsideration have been established, particularly in light of the high bar for reconsideration in this Circuit. Thus, Petitioner's motion for reconsideration is DENIED.

## III. SECOND HABAEAS PETITION

### A. Standard of Review

A federal prisoner may petition for habeas relief if she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Second Circuit has broadly interpreted the remedies available under section 2241

to include the "the computation of a prisoner's sentence by prison officials," *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001), as well as disciplinary sanctions, such as the loss of good-time credits, *see Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## B. Exhaustion

Under 28 U.S.C. § 2241, prisoners must exhaust administrative remedies with the BOP prior to filing suit in federal court. *See Carmona*, 243 F.3d at 634. This requires compliance with the BOP's four-step Administrative Remedy Program. *See* 28 C.F.R. § 542.10(a). However, this program differs slightly for inmates like Petitioner, who are being supervised by a Reentry Center. Though typically the first step is informal resolution with prison staff, *see id.* § 542.13(a), for Reentry Center supervisees, "[a]n informal resolution attempt is not required prior to submission to the Regional or Central Office," *id.* § 542.13(b).[3] Thus, the first step for a Reentry Center supervisee is to fill out an Administrative Remedy Request form and mail it to the Residential Reentry Manager. *See id.* §§ 542.14(a), (c). If the request is denied or the Warden fails to respond within 20 days, the next step is to appeal to the BOP Regional Director. *Id.* §§ 542.15(a), 542.18. If the appeal is denied or the Regional Director fails to respond within 30 days, the prisoner may appeal to the BOP General Counsel. *Id.* Once the General Counsel denies the claim or fails to respond within 40 days, the claim is considered administratively exhausted. *Id.* § 542.18. The regulations allow for the BOP to

---

[3] The statute refers to the Reentry Center as a "CCC," which was the term that the BOP was using to refer to these centers at the time of publication. (*See* Mot. for Reconsideration at 8 n.6.)

request an extension "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level," so long as the inmate is notified in writing. *Id.*

Petitioner asserts that she has exhausted her administrative remedies. The court agrees. On April 12, 2022, she mailed the appropriate Administrative Remedy Request form to the Regional Reentry Manager. (*See* Admin. Remedy Request, *Lallave III* (Dkt. 15-1).) Twenty days later, on May 2, 2022, upon receiving no response, she appealed to the Regional Director. (*See* Reg. Dir. App., *Lallave III* (Dkt. 15-2.) Thirty days later, on June 2, 2022, upon receiving no response, she appealed to the BOP General Counsel in the Central Office. (BOP Gen. Counsel App. (Dkt. 30-1).) After more than 40 days had passed, on July 14, 2022, she filed the Second Petition.

Respondents argue that Petitioner has not exhausted her administrative remedies because two of her submissions were rejected with instructions to refile. Respondents have submitted a declaration from a BOP paralegal with attached printouts from a BOP system that maintains records of such administrative claims. (*See* Baker-Dykstra Decl. (Dkt. 37-2) ¶ 7 & Ex. 1.) These printouts show that Petitioner's filings were apparently rejected at the Regional level with instructions to file at the Reentry Center level, and at the General Counsel level, with instructions to refile at the Regional level. (*Id.* ¶ 7.) Had she corrected these procedural defects, Respondents contend, she would have received a decision on the merits.[4] Instead, they argue that she continued to appeal and then rushed to file the Second Petition. However, the court

---

[4] Notably, though an inmate is supposed to receive a rejection notice explaining the procedural defect and how to cure it, if curable, Petitioner, despite checking her mail and checking in with the Reentry Center staff, was never informed of any issues with her filings. *See* 28 C.F.R. §§ 542.14(a), (c), 542.15(b), 542.17(b).

has carefully reviewed the regulations and has identified no defects in Petitioner's exhaustion procedure. Consequently, the court finds that Petitioner has exhausted her administrative remedies, which would ordinarily make this claim ripe for the court's review.

Despite the fact that Petitioner had exhausted her administrative remedies, at the time the Second Petition was filed, the court was without an administrative record, which would have allowed the court to determine whether it was appropriate to award Petitioner FSA credits, and if so, the number of credits to award. However, the court did not want to penalize Petitioner for the BOP's failure to notify her of alleged defects in her filings and to respond to her filings. Thus, on August 26, 2022, this court ordered the BOP to "produce a calculation of the credits that Petitioner has earned to date along with an explanation of why she has been denied credit for any period of time she has been in BOP custody." (*See* Aug. 26, 2022 Order, *Lallave III*.) On September 9, 2022, Respondents complied with the court order. (*See* Resps.' Supp. Submission, *Lallave III* (Dkt. 17).) Respondents submitted an affidavit from a correctional programs administrator, which explains how the credits have been implemented to date and states that Petitioner would have earned 375 days of time credit between December 27, 2019 and January 29, 2022, which is "more days tha[n] remain on her sentence." (Stokes Aff., *Lallave III* (Dkt. 17-3) ¶¶ 4-6, 8.) Since Petitioner has exhausted her administrative remedies, and the court now has a factual record, the court will consider the Second Petition.

## C.  Jurisdiction and Venue

When Petitioner filed the First Petition, she was incarcerated at the MDC, and so the Eastern District of New York was the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("[T]he immediate custodian rule applies to . . . challenges to present physical custody. By definition, the immediate custodian

10

and the prisoner reside in the same district."). This court previously found that venue was appropriate in this district, despite the fact that Petitioner resides in and is directly supervised by a facility in the Southern District of New York, based on consideration of the factors set forth in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-94, (1973) and the fact that the First Petition had been fully briefed in this district. *See Lallave*, 2022 WL 2338896, at *3-*4. However, Petitioner is now confined in her home and remains supervised by the same Reentry Center, both located in the Southern District. Given the change in circumstances, the court directed the parties to brief the issue of whether venue is appropriate in the Eastern District for the Second Petition. At this time, the court also considers whether it has jurisdiction to hear this case.

"The question [of] whether [a court] has jurisdiction over [a] habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does [the court] have jurisdiction over him or her?" *Padilla*, 542 U.S. at 434. A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243. The default rule from *Padilla* is that the proper respondent is "the warden of the facility where the prisoner is being held." *Id.* at 427. Where a Petitioner is on supervised release or parole, "a petitioner may substitute whatever parole board or other governing body is responsible for setting the conditions of supervised release and enforcing them if the petitioner violates those conditions." *Miller v. Sangiacomo*, No. 10-CV-169 (RJA), 2010 WL 3749065, at *3 (W.D.N.Y. Sept. 30, 2010) (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). It follows logically that the proper respondent for an inmate supervised by a Reentry Center is the New York Residential Reentry Management Office (the "Management Office"), which fulfills this supervisory role. (*See* Second Pet. ¶ 3.) Respondents agree and have identified four out of circuit cases in which district courts have found that

the relevant Residential Reentry Management Office was the appropriate respondent. (*See* Resps.' Supp. Submission at 5.) Thus, the court finds that Patrick McFarland, as the Residential Reentry Manager, is the proper respondent in this matter. (*See* McFarland Decl., *Lallave III* (Dkt. 20-1) ¶ 1.)

The next question is whether this court has personal jurisdiction over McFarland. *See Padilla*, 542 U.S. at 434 n.7; *see also id.* at 463 (Stevens, J., dissenting) ("It bears emphasis that the question of the proper forum to determine the legality of . . . incarceration is not one of federal subject-matter jurisdiction."). District courts may grant writs of habeas corpus to federal prisoners "within their respective jurisdictions." 28 U.S.C. § 2241(a). The Supreme Court has interpreted this phrase to mean "nothing more than that the court issuing the writ have jurisdiction over the [respondent]." *Braden*, 410 U.S. at 494-95. Respondents argue that keeping this case in the Eastern District is improper given that the Management Office is now located in the Southern District of New York. (*See* Resps.' Supp. Submission at 3.) However, and importantly, at the time that the Second Petition was filed on July 14, 2022, the Management Office was still located in the Eastern District of New York. (*See* McFarland Decl. ¶ 2 (stating that the Management Office location moved to the Southern District on August 1, 2022).) Thus, at the time the Second Petition was filed, it served the proper party in the appropriate district. And notably, Respondents consented to jurisdiction when they appeared in this case without disputing the court's jurisdiction over them. In the federal court system, we do not permit parties to escape ongoing litigation by simply moving out of the district.

On the question of venue, the court again considers the *Braden* factors: (1) "where all of the material events took place"; (2) where "records and witnesses pertinent to the petitioner's claim are likely to be found"; and (3) the relative convenience of the forum for the parties. *Henderson v. Immigration & Naturalization*

*Serv.*, 157 F.3d 106, 128 n.25 (2d Cir. 1998) (quoting *Braden*, 410 U.S. at 493-94). As Petitioner points out, unlike in *Lallave II*, there are no longer material events that took place in the Southern District given that the Second Petition does not include claims related to the positive marijuana test that occurred in the Southern District. (*See* Pet.'s Supp. Submission (Dkt. 41) at 3-4.) Now that the Management Office has moved, the "records and witnesses" have shifted somewhat to the Southern District, but as Petitioner notes, "with the advantages of modern technology, including faxes, scanners, and email, the difficulty of transferring [records] ought to be minimal." *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 496 (S.D.N.Y. 2009). As to the relative convenience of the forum, as the court previously found in *Lallave II*, the Eastern District and Southern District courthouses are merely one subway stop away. *See* 2022 WL 2338896, at *4. Though the Management Office has moved to the Southern District, the new Manhattan location on Varick Street is physically closer to the Eastern District courthouse than the old location in Sunset Park. (*See* McFarland Decl. ¶ 2.) Finally, this court emphasized in its prior opinion that

> the issues in this Petition have been fully briefed in this court, and as a result, "the pre-disposition in this Circuit to reach the merits of a dispute in service to judicial economy compel the assertion of jurisdiction by this Court." *Campbell v. Ganter*, 353 F. Supp. 2d 332, 338 (E.D.N.Y. 2004). Since "the Southern District would apply the same law to this case, the interests of judicial economy militate in favor of the resolution of [the] habeas petition before this court at this time." *Id.*

*Lallave*, 2022 WL 2338896, at *4. This concern is even more significant at this time since the court is familiar with this Petitioner and has issued a related ruling. Accordingly, the court finds that

jurisdiction and venue are appropriate in the Eastern District of New York.

### D. Eligibility for First Step Act Credit

To determine whether Petitioner is eligible for FSA credits, the court is faced with the proper interpretation of 18 U.S.C. § 3632(d)(4)(D), which provides that:

> [a] prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under . . . :

> (lviii) Section 401 of the Controlled Substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in subparagraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substance.

There are two open questions with respect to the interpretation of this eligibility provision. First, the court must determine whether an inmate must have been convicted of the "death or serious bodily injury" penalty enhancement set forth in section 841(b)(1)(C) (the "penalty enhancement") in order to be ineligible under this provision, or whether the mere fact that "death or serious bodily injury" occurred in the course of the use of the substance renders an inmate ineligible. Second, the court must determine whether it applies to convictions for conspiracy to commit crimes under section 841(b)(1)(C), even where there is no conviction for committing the substantive offense.

A conviction under section 841(b)(1)(C)'s penalty enhancement has a mandatory minimum term of imprisonment of twenty years. *See* 21 U.S.C. § 841(b)(1)(C). Since Petitioner was sentenced to a 42-month term of imprisonment, and the sentencing court did not address exceptions to the mandatory minimum, the

court finds that Petitioner was not convicted of the penalty enhancement. However, three individuals who purchased drugs from Petitioner did overdose and nearly die. (*See* Sentencing Tr. at 23:7-11.)

### 1.   BOP Deference

Respondents argue that "[t]he BOP's decision that Petitioner is ineligible for FSA credits is reasonable and entitled to deference." (Opp. at 5.) The Second Circuit has held that *Skidmore* deference is appropriate when considering a BOP decision on eligibility for good conduct time. *See Lopez v. Terrell*, 654 F.3d 176, 183 (2d Cir. 2011); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Under *Skidmore*, the court "construe[s] the statute in the first instance, giving effect to the [agency's] nonlegislative interpretation to the extent we find it persuasive." *Estate of Landers v. Leavitt*, 545 F.3d 98, 105 (2d Cir. 2008). In response, Petitioner argues that deference is not appropriate because section 3632(d)(4)(D)(lviii) is not ambiguous. (Reply (Dkt. 38) at 5.)

In *Terrell*, the Second Circuit was presented with the question of whether the phrase "term of imprisonment" in 18 U.S.C. § 3624(b) referred to "the total time served for a federal offense, both before and after sentencing, regardless of whether the inmate's presentence custody is credited to another sentence," as the district court found, or is limited to "the period of incarceration following the date of sentencing, as well as for any presentence custody credited to that period," as the BOP argued. 654 F.3d at 177. Since the panel determined that "both of these interpretations are facially consistent with the language of the statute, and because the statute itself offers no clear definition for 'term of imprisonment,'" the statute was ambiguous. *Id.* at 181. The court agrees with Respondents that there is ambiguity in the language of section 3632(d)(4)(D)(lviii). On the question of whether the inmate must have been convicted of the "death and serious bodily injury" penalty enhancement, there is a lack

of clarity. On the question of whether it applies to conspiracy convictions under 21 U.S.C. § 846, the statute is silent. *See Terrell*, 654 F.3d at 181. Accordingly, the court finds that this statutory provision is ambiguous.

However, the court must defer "only to the extent that [the agency's decision] has the power to persuade." *Id.* at 183. "[T]he weight afforded an agency interpretation depends on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* Initially, this court had been informed only that "Petitioner was made FSA ineligible on January 6, 2020." (Baker-Dykstra Decl. ¶ 7 & Ex. 1.) However, in response to the court's order on August 26, 2022, the court received further explanation:

> A review reveals you are currently serving a 42-month sentence for Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(C), and Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(C). The Presentence Investigation Report (PSI) shows your offense level was set at 38 due to the victims suffering serious bodily injuries from using the substance you provided.

(BOP Decision (Dkt. 17-1).) From this limited response, the court is able to draw two conclusions. First, the BOP interprets section 3632(d)(4)(D)(lviii) to at least apply in situations where the "serious bodily injury or death" enhancement has been applied under section 2D1.1(a)(2) of the sentencing guidelines. Second, the BOP interprets section 3632(d)(4)(D)(lviii) to apply to convictions for conspiracy under 21 U.S.C. § 846. However, the BOP has not proffered any rationale or explanation for its interpretation of the statute. By contrast, in *Terrell*, the Second Circuit

found that that the BOP's construction was "persuasive," and its "contextual approach aligns with traditional canons of statutory interpretation." 654 F.3d at 183. Here, the court has no basis upon which to conclude that the BOP's reasoning is persuasive or that its approach aligns with traditional canons of statutory interpretation because there is no reasoning whatsoever from the BOP. Accordingly, since the court does not find the agency's interpretation persuasive, the court gives little to no effect to its interpretation. *See Leavitt*, 545 F.3d at 105.

### 2.  Statutory Analysis[5]

Petitioner argues that this eligibility provision does not apply to her for two reasons. First, she was not convicted of the "death or

---

[5] In reviewing the eligibility provisions contained in 18 U.S.C. § 3632(d)(4)(D), the court observed that the exception contained in (lxvi) might be applicable to Petitioner since her indictment included a count under 21 U.S.C. § 841(b)(1)(B), and the drugs sold contained fentanyl. The court directed the parties to submit additional briefing on the applicability of this provision. Respondents assert that it similarly disqualifies Petitioner, and Petitioner asserts that it is inapplicable. The provision provides that:

> A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under . . . :
>
> (lxvi) Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof.

18 U.S.C. § 3632(d)(4)(D). The BOP has not issued any formal decision on this provision as to Petitioner, and so there is no agency decision to defer to. Though the sentencing court focused on the fentanyl present in the drugs that were sold during Petitioner's plea and sentencing, (*see* Plea Tr. at 21:15-23:15; Sentencing Tr. at 23:2-19), based upon its review of Petitioner's presentence report and judgment, the court concludes that the

serious bodily injury" penalty enhancement in 21 U.S.C. § 841(b)(1)(C) since she was sentenced below the mandatory minimum of twenty years. Second, she was convicted of conspiracy under 21 U.S.C. § 846, not of the substantive drug offense under 21 U.S.C. § 841(b)(1)(C).

The "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). Here, as noted, the statute is silent as to whether it applies to section 846 convictions for conspiracy, so there is no plain meaning for the court to interpret. On the issue of whether an inmate must be charged with the "death or serious bodily injury" penalty enhancement in section 841(b)(1)(C), the statute is also unclear: It could be read to require a conviction under the penalty enhancement or to require only a conviction under section 841(b)(1)(C) involving a substance that led to death or serious bodily injury. Because it would be reasonable to interpret the provisions in either manner, the court turns to canons of statutory interpretation to resolve the ambiguity. *See Dauray*, 215 F.3d at 262.

### a.   *Death or Serious Bodily Injury*

The court notes that this appears to be only the second opinion in which a court has been faced with the question of how to interpret the "death or serious bodily injury" language in 18 U.S.C. § 3632(d)(4)(D)(lviii). *See Lenze v. Gilley*, No. 21-CR-115 (DCR), 2021 WL 5862561 (E.D. Ky. Nov. 5, 2021). The defendant in

---

substantive count underlying Petitioner's conspiracy count was 21 U.S.C. § 841(b)(1)(C), not § 841(b)(1)(B)(vi). As Petitioner helpfully pointed out, she was sentenced to 42 months in custody, whereas section 841(b)(1)(B) carries a mandatory minimum of five years. Thus, even though Petitioner sold substances containing a detectable amount of fentanyl as a part of this conspiracy, the substantive count underlying the conspiracy charge was not under section 841(b)(1)(B)(vi), Accordingly, she is not ineligible for FSA credits under 18 U.S.C. 3632(d)(4)(D)(lxvi).

*Lenze* pled guilty to the sole count in his indictment: one count of violating 21 U.S.C. § 841(b)(1)(C), which resulted in the death of a person. *Id.* at *1. The defendant argued "that there is a 'defined difference' between a conviction under 21 U.S.C. § 841(b)(1)(C) and [a conviction under the enhancement of § 841(b)(1)(C) for] resulting in death or serious bodily harm and that he pled guilty to a 'lesser charge.'" *Id.* However, the court concluded that "the claim that he pled guilty to a 'lesser charge' is supported only by Lenze's own self-serving characterization of his plea and is, in fact, directly contradicted by the clear language of the Indictment to which he pled guilty." *Id.* Thus, the court held that Lenze was not eligible for FSA credits. The court seems to find that Lenze was in fact convicted of the penalty enhancement, not some "lesser charge" and finds him ineligible on that ground.[6] Given that *Lenze* provides limited guidance and is not binding upon this court, the court undertakes its own statutory analysis.

First, the court applies the "well-settled" presumption of meaningful variation. *See S.W. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022). When Congress repeats words, phrases, or structures from one statutory provision to another, we presume that variations among the instances are meaningful. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) ("We generally seek to respect Congress' decision to use different terms to describe different categories of people or things."). Looking holistically at the list of exclusions contained in section 3632(d)(4)(D), Congress used the phrase "death or serious bodily injury" in two other sections. See 18 U.S.C. §§ 3632(d)(4)(D)(xlvi), (lvii). In one section, Congress has excluded prisoners serving sentences

---

[6] Though the court noted that, like Petitioner's sentencing guidelines, Lenze's sentencing guidelines were increased by the "death or serious bodily injury" enhancement under U.S.S.G. § 2D1.1(a)(2), this does not appear to factor into the court's ultimate holding. *Id.* at *2.

for convictions under 18 U.S.C. § 2291, "relating to the destruction of a vessel or maritime facility, but *only if the conduct that led to the conviction* involved a substantial risk of death or serious bodily injury." *Id.* § 3632(d)(4)(D)(xlvi) (emphasis added). In the other, prisoners serving sentences for convictions under 49 U.S.C. § 60123(b), "relating to damaging or destroying a pipeline facility" are excluded, "but only if the *conduct which led to the conviction* involved a substantial risk of death or serious bodily injury." *Id.* § 3632(d)(4)(D)(lvii) (emphasis added). In both of those provisions, Congress explicitly chose to specify that ineligibility was premised on the "conduct that led to the conviction." In drafting the provision before the court, Congress instead premised ineligibility on a "conviction for an offense described [21 U.S.C. § 841(b)(1)(C)] for which death or serious bodily injury resulted from the use of such substance." *Id.* § 3632(d)(4)(D)(lviii). Since Congress chose to specify in other sections that the relevant "death or serious bodily injury" merely needed to be associated with the "conduct that led to the conviction" in order to render an inmate ineligible for FSA credits, but chose not to make that distinction for section 3632(d)(4)(D)(lviii), we must presume that to be an intentional choice. This suggests that section 3632(d)(4)(D)(lviii) should not be broadly interpreted to refer to conduct related to a conviction under 21 U.S.C. § 841(b)(1)(C) and should instead be limited to the conviction itself.

When a particular provision can be drawn from another statute, the court may presumptively interpret them the same way. *See Mosle v. Bidwell*, 130 F. 334, 335 (2d Cir. 1904) ("In doubtful cases a court should compare all parts of a statute and different statutes in pari materia to ascertain the intent of the Legislature."). "The rule of in pari materia—like any canon of statutory construction—is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular

word with a consistent meaning in a given context. Thus, for example, a later act can be regarded as a legislative interpretation of an earlier act in the sense that it aids in ascertaining the meaning of the words as used in their contemporary setting, and is therefore entitled to great weight in resolving any ambiguities and doubts." *Erlenbaugh v. United States*, 409 U.S. 239, 243-45 (1972). More recently, the Court clarified a limitation to the *in pari materia* canon, which is that only "statutes addressing the same subject matter generally should be read as if they were one law." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2006) (finding that "venue and subject-matter jurisdiction are not concepts of the same order").

Since the FSA eligibility provision directly references the acts prohibited under 21 U.S.C. § 841, they "pertain to the same subject," and the court can be certain that "Congress . . . act[ed] aware of [this] previous statute[] on the same subject." *Erlenbaugh*, 409 U.S. at 243-44. Thus, the court finds that it is appropriate to interpret the two provisions *in pari materia*. In drafting this provision of the FSA, Congress intentionally chose to use the same language that is used to set forth the "death or serious bodily injury" penalty enhancement of 21 U.S.C. § 841(b)(1)(C). *Compare* 21 U.S.C. § 841(b)(1)(C) (". . . if *death or serious bodily injury results from the use of such substance*" (emphasis added)) *with* 18 U.S.C. § 3632(d)(4)(D)(lviii) (". . . for which *death or serious bodily injury resulted from the use of such substance*." (emphasis added)). This court can, therefore, infer that in using the precise language that is used for the penalty enhancement of 21 U.S.C. § 841(b)(1)(C)—"death or serious bodily injury resulted from the use of such substance"—the FSA is referencing the penalty enhancement, not referring generically to conduct that resulted in death or serious bodily injury.

Finally, Respondents make much hay of the fact that Petitioner's base offense level under the sentencing guidelines was enhanced

because she was convicted under 21 U.S.C. § 841(b)(1)(C), "and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." U.S.S.G. § 2D1.1(a)(2).[7] However, the court is not persuaded that Congress intended to exclude inmates like Petitioner on this basis. Other provisions in section 3632(d)(4)(D) specifically reference guidelines enhancements as triggering ineligibility. For example, section 3632(d)(4)(D)(lxvii) disqualifies individuals who were found to be an "organizer, leader, manager, or supervisor" as defined "under the guidelines promulgated by the United States Sentencing Commission." 18 U.S.C. §§ 3632(d)(4)(D)(lxvii); *see also id.* §§ 3632(d)(4)(D)(lxv), (lxviii). If Congress intended to refer to the sentencing guidelines here, it would have made that explicit.

Though courts are instructed to turn to legislative history only after "the plain language and canons of statutory interpretation fail to resolve statutory ambiguity," *see Dauray*, 215 F.3d at 264, the court is mindful of the FSA's legislative history. "Legislative history is of course not the law, but that does not mean it cannot aid us in our understanding of a law." *Digital Realty Tr. v. Somers*, 138 S. Ct. 767, 782 (2018) (Sotomayor, J., concurring). In general, committee reports are treated as a "particularly reliable source to which we can look to ensure our fidelity to Congress' intended meaning." *Id.* The court notes that the FSA's legislative history suggests that, among other things, the congressional intent was to "control correction spending" and "manage the prison

---

[7] Courts employ a "preponderance of the evidence" standard to determine whether a sentencing guidelines increase is appropriate, as compared to the "beyond a reasonable doubt" standard required to prove guilt in a criminal proceeding. *See United States v. Salazar*, 489 F.3d 555, 557-58 (2d Cir. 2007).

population." H.R. Rep. No. 115-699, at 22 (2018).[8] In view of this goal of reducing the prison population, the court is inclined to read the eligibility provisions narrowly, consistent with its textual interpretation, to exclude only the individuals reasonably included in the text.

This court is persuaded, after applying the traditional canons of statutory construction to interpret the ambiguity in the text, that the eligibility provision is intended to apply specifically to individuals who were convicted of the penalty enhancement contained in 21 U.S.C. § 841(b)(1)(C). Petitioner was not. Accordingly, the court finds that the BOP has violated the First Step Act by failing to award Petitioner earned time credits.

### b.  Conspiracy

Because the court has found that 18 U.S.C. § 3632(d)(4)(D)(lviii) applies only to the penalty enhancement contained in 21 U.S.C. § 841(b)(1)(C), and Petitioner was not convicted of the penalty enhancement, the court need not reach

---

[8] A Report from the Judiciary Committee addressing the need for the FSA explains that:

> BOP has a growing prison population that, because of its rising costs, is becoming a real and immediate threat to public safety. The growing prison budget is consuming an ever-increasing percentage of the Department of Justice's budget. According to the Statement of the Department's Inspector General before Congress on March 14, 2013, concerning oversight of the Department of Justice: "it is clear that something must be done . . . the Department cannot solve this challenge by spending more money to operate more federal prisons unless it is prepared to make drastic cuts to other important areas of the Department's operations."

H.R. Rep. No. 115-699, at 23 (2018).

23

the question of whether this FSA eligibility provision applies to convictions for conspiracy under 21 U.S.C. § 846.[9]

### E.   The *Accardi* Principle

Petitioner contends that Respondents violated the principle set forth in *Accardi v. Schaughnessy*, which is that the BOP must follow its own regulations, procedures, and policies. *See* 347 U.S. 260 (1954). She argues that the BOP failed to follow its regulations when it refused to award her earned FSA credits. However, Petitioner has not identified any regulations that the BOP has purportedly failed to follow. Even if she had, Petitioner's *Accardi* claim is now moot, "as the only relief to which she would be entitled were she to prevail on that claim"—to compel the BOP award her credit—has been ordered as to her First Step Act claim. *See Tompkins v. Pullen*, 22-CV-339 (OAW), 2022 WL 3212368, at *15 (D. Ct. Aug. 9, 2022).

---

[9] The court notes that the Tenth Circuit very recently appears to have been the first court to address the issue of whether a conviction under 21 U.S.C. § 846 would render a defendant ineligible for FSA credits under a similar FSA eligibility provision involving conduct under 21 U.S.C. § 841(b)(1). *See Noe v. True*, No. 21-1373, 2022 WL 5080196 (10th Cir. Oct. 5, 2022). The Tenth Circuit held that a "conspiracy conviction under § 846 does not equate to [a defendant] serving a sentence for a conviction under § 841(b)(1)(A), pursuant to § 3632(d)(4)(D)(lxvii)." *Id.* at *10.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion for reconsideration is DENIED, and her Second Petition is GRANTED as to her First Step Act claim and DENIED as to her *Accardi* claim. The BOP is directed to award Petitioner the FSA credits that she is entitled to, which should result in her immediate release to supervised release, and to apply the remaining credits to reduce her time on supervised release.

SO ORDERED.

Dated:      Brooklyn, New York
            October 13, 2022

                                    s/Nicholas G. Garaufis

                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

25